IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 29, 2015 Session Heard at Martin[1]

## WILLIAM FORD V. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County
No. P27768     Glenn Ivy Wright, Judge**

_____

### No. W2014-02105-CCA-R3-PC  -  Filed November 10, 2015

_____

Petitioner, William Ford, appeals the denial of his petition for post-conviction relief from his conviction for first degree murder.  Petitioner argues that he received ineffective assistance of counsel and that the trial court erred when it denied his motion for a continuance in order to be able to retain private counsel.  Upon our review of the record, we affirm the judgment of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ROGER A. PAGE, JJ., joined.

Marty B. McAfee, Memphis, Tennessee, for the appellant, William Ford.

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Senior Counsel; Amy P. Weirich, District Attorney General; and David Zak, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Factual and Procedural Background*

---

[1] Oral argument was heard in this case on September 29, 2015, on the campus of the University of Tennessee Martin, hosted by the Criminal Justice program, the Department of Behavioral Sciences and the UT Martin College of Education, Health, and Behavioral Sciences, as well as the Kappa Epsilon chapter of the national criminal justice honor society, Alpha Phi Sigma.

This is Petitioner's appeal from the Criminal Court of Shelby County's order denying his request for post-conviction relief.

Petitioner was convicted of first degree murder and received a sentence of life without parole. *State v. William J. Ford*, W2000-01205-CCA-R3-CD, 2002 WL 1592746, at *1 (Tenn. Crim. App. July 12, 2002), *perm. app. denied* (Tenn. Dec. 16, 2002). The following facts are drawn from this Court's opinion on direct appeal:

On February 4, 1999, the victim, Dilanthious Drumwright, was a high school student walking from school with a group of other young people of various ages. Within this group were Soibhan Fleming, Tiffany White, and Alfonzo Bowen. In order to avoid a potential confrontation resulting from an altercation which had taken place further up the street on the previous day, the students had left the street they would have ordinarily traveled. Nevertheless, two vehicles pulled up near the group. Demond Gardner drove the car in which the defendant and Jerry Joyce were riding. Chris Lewis drove the other vehicle with his brother Derrick Lewis as a passenger.

Fleming, White, Gardner, Joyce, and Bowen testified for the State as eyewitnesses to the incident. Gardner related that the defendant had left Gardner's car and obtained a weapon from someone in Chris Lewis'[s] vehicle prior to the shooting. All five witnesses identified the defendant as the shooter and recalled that multiple shots had been fired. Bowen, in fact, stated that he had heard nine or ten shots, and Officer Sherman Bonds of the crime scene unit testified that he had recovered nine spent shell casings and one live round in the immediate area. Additionally, numerous individuals testified concerning threatening comments made shortly before the shooting by the defendant or others in the automobiles. It was determined that one of the shots had hit the victim in the back resulting in his death.

After firing the weapon, the defendant returned to Gardner's car, and both vehicles left the scene. Gardner recounted that he thereafter drove the defendant to Chris Lewis'[s] house, where the defendant left the car taking the weapon with him. When the defendant returned shortly thereafter, Gardner saw no weapon. He then took the defendant to the defendant's home.

Following the defendant's arrest for this crime, the defendant composed and sent three letters to Gardner. These letters instructed Gardner to relay to various potential defense witness[es] what their

testimonies should include and to threaten female witnesses involved in the case. Gardner turned these letters over to the authorities before the defendant's trial, and all three were later admitted in that proceeding.

After hearing the above-outlined and additional poof, the jury convicted the defendant of first degree murder and, at the conclusion of the sentencing phase of the trial, sentenced him to life without parole for the offense.

*Id.* at *1-2 (footnotes omitted). This Court affirmed Petitioner's conviction on appeal.

On October 3, 2003, Petitioner filed a timely petition for post-conviction relief, alleging that he received the ineffective assistance of counsel and that the trial court erred in denying his motion for a continuance in order to hire private counsel. Petitioner was appointed an attorney, who filed an amended petition on February 11, 2004. Petitioner's first attorney subsequently withdrew, and Petitioner was appointed another attorney, who filed an amended and supplemental petition on November 4, 2009. Petitioner's counsel then filed a supplement to the amended petition on December 16, 2013. Evidentiary hearings were held on November 14 and 15, 2013; December 16, 2013; January 24, 2014; and February 25 and 26, 2014.[2]

Petitioner testified that he had two attorneys appointed to his case but that he only met with the lead attorney twice and the second attorney one time. Petitioner met with the investigator once or twice. Petitioner testified that the lead attorney told him that she was going to get him electrocuted because he was "acting like a little dick."

According to Petitioner, the defense team never discussed a self-defense strategy, even though Petitioner told them about altercations between himself and the gang in which the victim was a member in the days leading up to the murder. Petitioner, a member of the Crips gang, explained that he had been involved in four or five fights with members of the rival Vice Lords gang. Petitioner said that a guy named Fred threatened his life. Petitioner stopped going to school during this time because of the fights.

On the day of the shooting, Petitioner said that Fred and the victim were in a group of ten to fifteen Vice Lords that were threatening Petitioner and his friends. Petitioner

---

[2] From the record, it appears that the delay in this case is partly attributable to the Petitioner, who filed several disciplinary complaints against one of his appointed attorneys. It also appears that the case was delayed because of Petitioner's serious medical issues and inability to locate witnesses. The record does reflect that the post-conviction court who eventually heard the matter acted in a timely manner, setting an evidentiary hearing within a few months of his appointment to the trial court. However, there is no adequate explanation as to why over eleven years elapsed between the filing of the original petition and the evidentiary hearing.

did not see any guns, but he did see people reaching towards their waistbands. Petitioner explained that the gesture signified that the person was armed and was reaching for a weapon. Petitioner testified that he was afraid because he had seen some of these people armed before. Petitioner claimed that he just shot the gun into the air to scare them off.

Petitioner stated that he told his attorneys about the fights and made them aware of various witnesses. Petitioner filed several complaints against his attorneys with the Board of Professional Responsibility, alleging that he had not been provided with discovery, that witnesses had not been contacted, and that his attorneys were not working in his best interest. On the day of trial, Petitioner asked the trial court for a continuance so that he could hire his own counsel, but the trial court denied the motion.

On cross-examination, Petitioner acknowledged the essential facts of the murder. He admitted that he rode in a car to the scene, which was in an area deemed to be part of the Vice Lords' territory. Once there, he obtained a gun from someone named Henry Campbell. He admitted that the victim was shot in the back. He also admitted that he lied to police when he initially gave a statement, claiming that he was somewhere else at the time of the shooting. Petitioner also acknowledged that, while in custody, he wrote several threatening letters to witnesses to get them to change their stories.

Petitioner also presented the testimony of several witnesses that he claimed would substantiate his self-defense theory, including Venus Jones, Eric Lewis, Demond Gardner, Lonnie Maclin, and Randy Bennett. These witnesses generally confirmed the tensions between members of the Vice Lords and Petitioner in the days leading up to the shooting, including the fact that Petitioner was involved in several fights in which he was often outnumbered. According to Mr. Bennett, the Vice Lords threatened "if [Petitioner] come back to school or [they] catch [him] up here again, they were going to kill him." Petitioner was in and out of school because of the threats, and he was absent on the day of the shooting.

Ms. Jones, Mr. Gardner, and Mr. Maclin testified regarding an incident occurring at a tire shop shortly before the shooting. Petitioner accompanied Ms. Jones as she was walking home from school. At the tire shop, a group of fifteen Vice Lords yelled obscenities and threatened Petitioner. However, no fight took place. Ms. Jones testified that Petitioner appeared scared when they parted ways.

The shooting occurred in the parking lot of a liquor store just a few streets over from the tire shop. According to Mr. Gardner and Mr. Maclin, there were up to fifteen Vice Lords and about five Crips at the liquor store. The witnesses indicated that the Vice Lords were advancing on the Crips, threatening to kill them. Some members of the Vice Lords were moving their hands as if to pull up their shirts, which the witnesses explained was a threatening gesture. According to Mr. Maclin, lifting one's shirt indicates "I'm

fixing [to] pull out my gun or its fixing to go down." Mr. Gardner testified that he did not see a gun. Mr. Maclin testified that he thought he saw a Vice Lord with a gun at the moment Petitioner began shooting.

Mr. Lewis testified that he was present at trial as a potential witness but that the defense team elected not to call him. Petitioner acknowledged that counsel did not put Mr. Lewis on the stand because she felt he was not going to be of any help. Mr. Gardner testified for the State at trial. Mr. Gardner explained that he was afraid of being prosecuted for the murder and that when he talked to the police, he felt pressured to say what they wanted to hear. Mr. Maclin testified that he would not have wanted to talk to the defense team if interviewed, would not have wanted to come to court, and "probably would have got up here and been like I didn't even want to talk about it."

Lead counsel testified that she worked for the Public Defender's Office for twenty-three and a half years. She estimated that at the time of Petitioner's trial, she had tried over fifty cases and been involved in about a dozen murder cases, including serving as first or second chair on four or five.

Counsel testified that the defense team discussed both a self-defense theory as well as an intoxication defense. Petitioner provided a list of witnesses, but there were only two or three with whom the defense team was able to speak. Counsel testified that she tried to leave messages with several witnesses but did not hear back from them. Counsel had a lengthy interview with Mr. Gardner. While he confirmed that there were threats and that people in the other gang were approaching Petitioner, Mr. Gardner said that the victim did not have a gun, and he did not see a gun during the altercation. Counsel testified that Petitioner's self-defense theory was risky because no one testified that the victim had a gun or that he looked as if he were pulling out a weapon.

Counsel testified that leaving out a mandatory pattern jury instruction concerning the burden of proof was an oversight. Counsel could not remember if she requested a jury instruction on self-defense. As for Petitioner's request to hire private counsel, counsel testified that she did not realize there was "that much friction" between herself and Petitioner. She explained that it is not unusual for capital defendants to get nervous before trial and ask for a new attorney. She testified that she had received no indication from Petitioner's family that they were planning to hire an attorney.

On September 29, 2014, the post-conviction court issued a written order denying Petitioner's request for relief. The post-conviction court found that trial counsel was not ineffective for failing to present witnesses in support of Petitioner's self-defense theory. The post-conviction court found that the decision not to call a witness who is available is a matter of trial strategy. The post-conviction court found that trial counsel was not ineffective for failing to request the pattern jury instruction on the burden of proof,

finding that the jury instructions given "sufficiently described the degree of doubt necessary for acquittal and the degree of proof necessary for conviction." *Citing John Michael Bane v. State*, No. W2009-01653-CCA-R3-PD, 2011 WL 2937350, at *38 (Tenn. Crim. App. July 21, 2011), *perm. app. denied* (Tenn. Mar. 7, 2012). The post-conviction court also found that Petitioner was not denied his Sixth Amendment right to counsel when the trial court denied his motion for a continuance to be able to hire an attorney. The post-conviction court found that the evidence supported the trial court's determination that the request was a delay tactic and that Petitioner failed to show he was prejudiced.

Petitioner filed a timely notice of appeal.

*Analysis*

On appeal, Petitioner argues that he received the ineffective assistance of trial counsel in that trial counsel failed to present witnesses in support of a self-defense theory and failed to request critical jury instructions. Petitioner also argues that he was denied the Sixth Amendment right to counsel of his choice when the trial court denied his motion for a continuance to be able to hire a private attorney.[3] The State responds that Petitioner did not receive ineffective assistance of counsel and that Petitioner waived his claim with regard to the denial of the motion for continuance because he did not raise it on direct appeal.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). This Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the post-conviction court. *Henley*, 960 S.W.2d at 579. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by

---

[3] Petitioner raised several other arguments in the proceeding below, but because he has not pursued those on appeal, they are deemed abandoned. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. 2009), *perm. app. denied* (Tenn. Apr. 16, 2010).

the evidence are to be resolved by the post-conviction court. *Momon*, 18 S.W.3d at 156 (citing *Henley*, 960 S.W.2d at 578). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

## A. Ineffective Assistance of Counsel

Both the Sixth Amendment to the Constitution of the United States and Article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580. "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). A defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). This Court will not use hindsight to second-guess a reasonable trial strategy, *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994), even if a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting *Goad*, 938 S.W.2d at 369). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were

made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. Prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Id.*

Petitioner claims that counsel was ineffective for failing to call various witnesses to testify in support of his self-defense theory. Counsel testified that the defense team attempted to contact the witnesses identified by Petitioner but were unsuccessful. Mr. Maclin's testimony indicated that he would not have cooperated with the defense team had they sought to interview him, and he equivocated on whether he would have testified truthfully had he been called as a witness. Ms. Jones and Mr. Bennett did not witness the shooting and would have provided little support to a self-defense theory. Mr. Gardner testified for the State at trial, and Petitioner has not indicated what counsel could have done to elicit more favorable testimony from him at trial. While Mr. Lewis was present at trial and available to testify, counsel's decision not to call him was a tactical decision entitled to deference. *Vaughn v. State*, 202 S.W.3d 106, 123 (Tenn. 2006).

Additionally, Petitioner failed to show that he was prejudiced by counsel's failure to call these witnesses. Petitioner cites *State v. Ruane*, 912 S.W.2d 766 (Tenn. Crim. App. 1995), for the proposition that proof of prior violent acts by the victim can corroborate a claim of self-defense. However, there was no evidence presented at the post-conviction hearing of prior violent acts by the victim, but only that Petitioner had gotten into fights and been threatened by other members of the Vice Lords. While some of the witnesses at the post-conviction hearing testified that the Vice Lords were making threatening gestures and were advancing on Petitioner's group, only Mr. Maclin testified that he saw a gun. Additionally, other evidence at trial indicated that the victim's group was actually walking away before the shooting occurred. *See William J. Ford*, 2002 WL 1592746, at *4. Petitioner's testimony that he fired shots "in the air" is inconsistent with both the proof that the victim was shot in the back and the self-defense statute. *See* T.C.A. § 39-11-611(a); *State v. Stanley Blackwood*, No. W1999-01221-CCA-R3-CD, 2000 WL 1672343, at *9 (Tenn. Crim. App. Nov. 2, 2000) (holding in a case in which "the defendant claimed that he only fired his own gun in the air after he was attacked," that "notwithstanding the improbability of the defendant's testimony, he was not entitled to a self-defense instruction, because even according to his own testimony, he did not intentionally fire at anyone"), *perm. app. denied* (Tenn. May 21, 2001). Petitioner has failed to prove either deficiency or prejudice and is not entitled to relief on this basis.

Petitioner also argues that trial counsel was ineffective for failing to request a pattern jury instruction on the burden of proof. This Court has previously held that trial counsel is not ineffective for failing to request a pattern jury instruction so long as the "trial court 'sufficiently described the degree of doubt necessary for acquittal and the degree of proof necessary for conviction.'" *John Michael Bane*, 2011 WL 2937350, at *38 (quoting *Pettyjohn v. State*, 885 S.W.2d 364, 365 (Tenn. Crim. App. 1994)). The post-conviction court found that the jury instructions given by the trial court were nearly identical to those given in *John Michael Bane*. Therefore, trial counsel was not ineffective for failing to request the specific pattern jury instruction on the burden of proof.[4] Petitioner has not proven by clear and convincing evidence that he received the ineffective assistance of counsel and is not entitled to relief.

## B. Right to Counsel of Choice

Petitioner argues that the trial court erred in denying his motion for continuance in order to be able to hire private counsel. Petitioner did not raise this claim on direct appeal. *See William J. Ford*, 2002 WL 1592746, at *1. Therefore, this issue is waived. T.C.A. § 40-30-106(g). Additionally, the evidence presented does not preponderate against the post-conviction court's finding that the trial court did not abuse its discretion in denying the motion. *See State v. Schmeiderer*, 319 S.W.3d 607, 617 (Tenn. 2010) ("An abuse of discretion is demonstrated by showing that the failure to grant a continuance denied defendant a fair trial or that it could be reasonably concluded that a different result would have followed had the continuance been granted."); *State v. White*, 114 S.W.3d 469, 475-76 (Tenn. 2003) (holding that "the right to the counsel of one's choosing must be balanced against the requirements of the fair and proper administration of justice"). Petitioner is not entitled to relief.

## Conclusion

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____
TIMOTHY L. EASTER, JUDGE

---

[4] Petitioner also suggests that trial counsel's failure to request a jury instruction on self-defense is "troubling." To the extent that Petitioner raises this as a separate claim of ineffective assistance of counsel, it is waived as being raised for the first time on appeal. *See Anthony H. Dean v. State*, No. W2005-02319-CCA-R3-PC, 2006 WL 3613598, at *5 (Tenn. Crim. App. Dec. 7, 2006), *perm. app. denied* (Tenn. Apr. 16, 2007).